Victor R. Havas and Arlene Havas v. Commissioner.
Havas v. Commissioner
Docket No. 604-69.
United States Tax Court
T.C. Memo 1970-318; 1970 Tax Ct. Memo LEXIS 40; 29 T.C.M. (CCH) 1461; T.C.M. (RIA) 70318; November 18, 1970, Filed. R. Paul Sorenson, 323 Las Vegas Blvd. So., Las Vegas, Nev. for the petitioners. Eugene H. Ciranni, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined deficiencies and penalty in petitioners' income tax for the years 1957 to 1964, inclusive, as follows: Year
Deficiency
Penalty Sec.6651(a)
1957
$ 833.40
1958
1,679.38
1959
1,241.56
1960
4,327.01
1961
1,724.95
$172.50
1962
352.83
1963
539.50
1964
272.58
The taxable year 1965 is involved in this case only to the extent that *41 disallowance of certain expenses in that year will reduce the amount of net operating loss carried back to taxable year 1962. Concessions having been made, the issues remaining for decision are: (1) the deductibility of alleged travel, entertainment, and promotional expenses allegedly incurred during taxable years 1957 through 1965; 1462 (2) the deductibility in taxable year 1960 of a claimed purchase expense allegedly incurred in purchasing an automobile for resale in petitioner's business; and (3) whether petitioner's admitted double inclusion of a $1,163.60 loss on repossession of an automobile was corrected so as not to be reflected as a double deduction on his 1959 income tax return. Findings of Fact Some of the facts have been stipulated and are, together with the exhibits attached to the stipulation of facts, incorporated herein by this reference. During the taxable years 1957 through 1965 petitioners resided in Las Vegas, Nevada, and filed joint income tax returns for each calendar year with the district director of internal revenue, Reno, Nevada. For all the years in question petitioners employed the accrual method of accounting. Arlene Havas is a party to *42 this action only by virtue of having filed a joint return, consequently Victor Havas will hereinafter be referred to as petitioner. During the years in issue petitioner operated a used-car business in Las Vegas. He worked very hard at his business, normally 12 to 14 hours per day and generally 7 day a week. In each of the years before us petitioner, allegedly in entertaining business associates, incurred substantial debts to many of the well-known clubs of the Las Vegas Strip. In addition to the expenses incurred at the well-known casinos, expenses were incurred in establishments located in close proximity to petitioner's business location, in particular the Italian Village and Showboat Hotel. Annual expenses were incurred at the following establishments in the amounts set forth 1463 1957
1958
1959
1960
Coach + Four
$ 28.95
Colonial House
$ 2.00
$ 158.65
16.30
Desert Inn
$ 106.12
67.45
11.31
7.16
Dunes Hotel
310.43
133.45
123.21
16.15
El Cortez Hotel
36.76
52.94
48.18
The Flame Restaurant
Flamingo Hotel
125.50
13.16
24.17
Foxy's Restaurant
79.15
211.10
Fremont Hotel
67.78
21.79
16.89
25.30
Hacienda Hotel
82.75
250.98
103.61
236.64
Italian Village
645.42
1,298.36
1,333.03
1,412.16
Louigi's
84.35
92.15
Prime Rib
Rivera Hotel
126.94
152.29
69.62
56.12
Royal Nevada Hotel
278.88
6.00
Sahara Hotel
123.51
45.70
34.05
31.33
Sands Hotel
481.96
273.71
116.19
6.31
Showboat Hotel
420.40
182.87
793.49
332.27
Silver Slipper
104.08
29.23
10.29
7.29
Stardust Hotel
53.27
24.50
40.28
Thunderbird Hotel
124.22
21.42
54.48
18.71
Tropicana Hotel
248.55
73.12
99.74
12.19
Misc. Restaurants
267.73
205.28
19.64
5.94
LaVista Club
103.95
361.25
Cash
1,500.00
1,000.00
V. Havas
737.00
300.00
2,615.32
Unidentified
778.56
443.31
( 272.25)
712.99
Day Dream Guest Ranch
80.00
70.85
9.20
Desert Spa
60.12
Misc. (not restaurants)
264.37
105.32
303.06
99.46
Desert Travel
69.30
Almon Adams (Employee)
Western Union
Cash marked for buying trips
Greyhound
Hollywood Roosevelt Hotel
Thunderbird Air Field
Dick Spooner
175.00
Total
$5,495.31
$4,208.92
$4,660.84
$7,347.19
*43 1961
1962
1963
1964
Coach + Four
$ 34.35
$ 45.40
Colonial House
Desert Inn
$ 8.86
Dunes Hotel
85.00
39.90
4.59
$ 4.60
El Cortez Hotel
12.89
115.33
6.00
The Flame Restaurant
341.95
343.40
45.65
Flamingo Hotel
39.30
15.16
104.33
49.53
Foxy's Restaurant
108.76
393.68
239.99
167.78
Fremont Hotel
29.01
8.63
33.73
11.05
Hacienda Hotel
2.55
28.60
41.69
Italian Village
641.18
365.31
485.59
96.60
Louigi's
Prime Rib
140.80
131.80
Rivera Hotel
88.96
65.24
48.47
4.60
Royal Nevada Hotel
Sahara Hotel
35.40
108.62
11.16
90.55
Sands Hotel
101.58
122.50
193.99
34.52
Showboat Hotel
122.78
1,112.07
324.07
511.44
Silver Slipper
Stardust Hotel
22.40
25.27
26.53
25.03
Thunderbird Hotel
11.50
76.26
24.09
27.18
Tropicana Hotel
54.60
12.20
Misc. Restaurants
141.65
18.94
221.14
12.20
LaVista Club
52.15
Cash
1,127.90
430.37
200.00
V. Havas
96.17
502.05
Unidentified
92.07
168.42
6.95
( 19.71)
Day Dream Guest Ranch
Desert Spa
Misc. (not restaurants)
59.84
39.00
44.40
Desert Travel
Almon Adams (Employee)
75.00
Western Union
325.00
Cash marked for buying trips
848.45
296.00
265.00
Greyhound
53.99
Hollywood Roosevelt Hotel
18.00
Thunderbird Air Field
Dick Spooner
Total
$4,550.44
$3,984.29
$2,509.99
$1,534.26
*44 1464 With respect to the taxable years 1957 through 1962 petitioner determined the amounts shown on the above table by aggregating his monthly bill from each establishment and entering an annual figure. The monthly bills included petitioner's lunch every day and not infrequently his dinner. Figured on the basis of 365 days a year, petitioner's average daily expenditure on alleged entertainment is $11.74. The figures entered for the years 1963 and 1964 were also determined by aggregating the monthly bills and entering the annual total. For 1964, however, a daily calendar, with numerous entries in the spaces provided therefor, was kept by petitioner. These entries generally consisted of someone's first name and the name or initials of the restaurant or establishment visited on that date. For the years in question petitioner claimed deductions for travel and entertainment in the following amounts, and his deductions were allowed or disallowed as indicated: Year
Claimed
Not Allowed
Allowed
Income Increase
1957
$ 5,495.31
$ 2,747.65
$ 2,747.66
$ 2,747.65
1958
4,208.92
2,104.46
2,104.46
2,104.46
1959
4,660.84
2,830.42
[1] 1,830.42
2,830.42
1960
7,347.19
5,181.30
2,165.89
5,181.30
1961
4,550.44
2,775.22
1,775.22
2,775.22
1962
3,984.29
1,992.15
1,992.14
1,992.15
1963
2,509.99
1,254.99
1,255.00
1,254.99
1964
1,534.26
767.13
767.13
767.13
Total
$34,291.24
$19,653.32
$14,637.92
$19,653.32
*45 On the evening of February 24, 1960, petitioner cashed a counter check at the Nevada Club (a gambling casino) for $3,000 in cash. On February 25, 1960, the next day, petitioner's bookkeeper filled out a business check to act as a record, receipt or invoice, and pursuant to petitioner's instructions noted on the check that the $3,000 received the day before had been used to make cash purchases. Petitioner maintains comprehensive records on all automobiles purchased by him for resale. These records include the make and model of the automobile, its stock number, the date of acquisition, the price paid, the source of acquisition, the purchaser upon resale, the price on resale, and the terms of payment on the resale. In the taxable year 1959 petitioner repossessed an automobile which he had previously sold to a Helen Green. On repossesion the car was worth less than the amount still owing on it and, consequently, petitioner suffered a loss of $1,163.60. Petitioner credited the repossession loss on his books twice for this single *46 item. In addition to disallowing the portions of the entertainment expenses set forth above, respondent in his notice of deficiency disallowed both the $3,000 claimed purchase expense and the $1,163.60 repossession loss. Opinion The primary issue in the case before us involves the deductibility of travel, entertainment, and promotion expenses in excess of the amount allowed by respondent. The years involved here cover a span from 1957 through 1965. During this period Congress enacted section 274 [2] providing restrictions on entertainment expenses in addition to those previously levied by section 162. Since section 274 is applicable to taxable years 1963 and following, they will be dealt with separately. The total amount expended by petitioner in each of the years 1957 to 1962, inclusive, is not in issue. Granting that petitioner spent what he claimed as a deduction, respondent here contends that petitioner's inability to establish that such expenditures were, in fact, business expenses should result in disallowance as determined. To be entitled to a deduction for entertainment expenses *47 within section 162, a taxpayer must show not only that the amounts claimed as a deduction were spent on travel and entertainment, but also, that the travel and entertainment were of a nature so related to the conduct of his business as to be ordinary and necessary business expenses as distinguished from personal expenses. [John Robinson, 51 T.C. 520 at 534 (1968), affd. 422 F. 2d 873 (C.A. 9, 1970).] The showing required is not a general one but, on the contrary, that each expenditure incurred was of a nature indicating an ordinary and necessary business expense. See William F. Sanford, 50 T.C. 823 (1968), affd. 412 F. 2d 201 (C.A. 2, 1969), certiorari denied 396 U.S. 841 (1969). This requirement is 1465 ameliorated by the principle set forth in Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930), providing that where a petitioner's records and testimony are inadequate to substantiate a substantial portion of the expenditures claimed, the Court is required to estimate the amount of the deduction to which a petitioner is entitled based on all the evidence. The evidence produced by petitioner attempting *48 to establish the legitimacy of his claimed entertainment expenses is incredibly weak. The testimony of petitioner's former employee, Louis Solomon, is not helpful. Nothing can be gleaned from this witness' testimony except that petitioner works hard and long hours and that Solomon and petitioner took a trip to Detroit for the purpose of purchasing automobiles for resale sometime in 1959 or 1960. We agree with the former and have so found; the latter is also true, but petitioner has been allowed $1,000 in expenses for said trip and nothing produced by this witness or anyone else convinces us that any greater amount was actually spent. The testimony on behalf of petitioner by John R. Benton is likewise not helpful. Benton, an electrical contractor, testified that petitioner worked long hours and that he frequently had lunch with petitioner and that at times petitioner purchased his lunch. Benton and petitioner have known one another for 17 or 18 years and during this time Benton has never purchased a car or truck from petitioner for his personal or business use. The only business connection shown to exist between Benton and petitioner is that at some time petitioner hired Benton to install *49 some electrical fixtures in the carlot office. Petitioner has shown no business relationship with this witness even remotely sufficient to warrant the deduction of an entertainment expense when they joined one another for lunch. The only other evidence offered on petitioner's behalf is his own testimony which is of such a general and conclusory nature as to carry little, if any, weight. Petitioner is of the opinion that he works so hard and such long hours that all of his time is spent in his business and, consequently, that all expenditures made by him are business in nature. Petitioner's view of what expenses are deductible is much too broad. He readily admits that the expenses claimed include his lunches every day, and it is clear from the testimony that often his dinners are included. That he considers such meals to be deductible whether taken alone, with friends, or potential clients is hardly reassuring. See Reginald G. Hearn, 36 T.C. 672 (1961), affd. 309 F. 2d 431 (C.A. 9, 1962), certiorari denied 373 U.S. 909 (1963). The evidence offered by Benton also indicates a belief by petitioner that meals taken with those having no legitimate *50 business connection with his business entitle him to a deduction for both of their meals. This is just not so. Based on the foregoing it is patent that petitioner has not adequately established that he is entitled to the deductions claimed. The principle of Cohan, supra, dictates that the Court estimate from the evidence what portion of the claimed deduction should be allowed. This, however, is not necessary when respondent has previously employed the Cohan principle in asserting his deficiency. In such a case the question really is whether respondent's application of Cohan is, considering the evidence, fair and adequate. Respondent here has allowed approximately 50 percent of the unsubstantiated expenses in each of the years 1957 through 1962. In view of the case presented by petitioner we believe that such an allowance is not only fair and adequate but may be generous. With respect to the travel, entertainment, and promotion expenses claimed for 1963 through 1965, in addition to satisfying the requirements of section 162 set out above, petitioner must meet the substantiation requirements of section 274(d). The only additional evidence offered with respect to these *51 years is a daily calendar or daily work schedule for the year 1964 containing numerous notations in the boxes provided for each day of the week. The notations generally consist of the date, initials indicating the restaurant or club to which petitioner was going, and the first name of the person he was joining or taking. There is no indication whatsoever of any business connection between the person entertained and petitioner, nor is there any sign that what transpired was of a business nature. Several boxes contain the name Benton as petitioner's guest and, assuming this is the same Benton as testified for petitioner, we have previously determined that petitioner has shown no business relationship with him. Having included Benton on his record of business expense lunches we might speculate that others on his list are personal associates. There are a number of days that have no notation in the box provided. We assume from this that on such 1466 occasions petitioner took no one to lunch and therefore ate alone. Clearly the costs of petitioner's meals in such circumstances are nondeductible personal expenditures, yet he claims deductibility of his own lunch every day. The evidence *52 offered with respect to 1963 through 1965 is inadequate to satisfy this Court that the claimed expenses were ordinary and necessary business expenses within section 162. The additional evidence offered with respect to 1964 is also unconvincing. Even if we were to decide that petitioner satisfied section 162 with respect to the more recent years, he clearly falls short of the requirements of section 274(d). Section 274(d) demands that entertainment expenses be substantiated before being allowed as deductions. Failure to so substantiate results in total disallowance. Application of the Cohan rule is not proper for taxable years 1963 and following. See William F. Sanford, supra.That respondent has only disallowed 50 percent of these unsubstantiated expenses is an example of the reasonableness of respondent's position. The second issue involved here concerns the alleged purchase of an automobile for resale in petitioner's business. The facts surrounding the alleged purchase caused respondent to disallow the claimed purchase expenses of $3,000 for taxable year 1960. Petitioner asserts the following: On the evening of February 24, 1960, an unidentified gambler came to petitioner's *53 carlot seeking cash for his automobile. A purchase price of $3,000 was negotiated and petitioner believed it to be a good deal. Not having that amount of cash on hand, petitioner found it necessary to cash a check. To do so he and an associate drove approximately four miles to the Nevada Club casino where petitioner had sufficient credit to cash such a large check. Upon arriving at the casino petitioner discovered that he had not brought along his checkbook and for this reason filled out and cashed a $3,000 counter check. He then returned to his business and completed the sale. On the next day, under petitioner's direction, the bookkeeper of the business filled out a business check to serve as an invoice or record. The check was for $3,000 and had written across its face that it was for "cash purchases." Other than the above testimony of petitioner and the bookkeeper's record there is no evidence of the transaction. Petitioner does not remember the seller's name, the kind of car, color, license, or any other particulars. He has produced no supporting witnesses nor adequate recorded evidence. For all purchases of automobiles for resale petitioner keeps extensive records, most of *54 which are required by the State Motor Vehicle Department. Included in these records are the person from whom petitioner bought the automobile, the price paid, all the details of the automobile, who purchased it, the selling price, and the terms of sale. None of the above information was offered by petitioner in support of his claim. Nor was there any notation on the counter check of the specific purpose for which he was acquiring the funds. In the absence of corroborating evidence of any kind we are unwilling to accept petitioner's unsupported testimony of what occurred that day. Nor is the business check filled out for purposes of a record any help. It was prepared under petitioner's directions and states nothing other than petitioner cashed a $3,000 check for "purchases." The burden of proving that an item has been improperly disallowed by respondent is on petitioner. Rule 32, Tax Court Rules of Practice.Welch v. Helvering, 290 U.S. 111 (1933). Petitioner has not carried his burden of proof with respect to the alleged purchase of an automobile and consequently we must find for respondent. The final issue to be decided is whether petitioner twice accounted for *55 a loss suffered on repossession of an automobile. The parties agree that in 1959 a loss of $1,163.60 was suffered when petitioner repossessed a car from Helen Green. Likewise petitioner concedes that he in fact erroneously entered this loss in his books twice. Petitioner, however, aserts that prior to filing his income tax return for 1959, the double entry accounting method employed by him would necessitate correction of the error. To this effect petitioner offered evidence that he employed an acceptable method of accounting in his business, that generally such an error would be noticed upon reconciling accounts, and that upon such discovery the correction would be made by crediting a corresponding account. This offer of proof is insufficient, and petitioner again must lose for failure to meet his burden of proof. There was absolutely no effort to show that petitioner actually discovered or corrected the error. Nor was there a sufficient 1467 answer made to the government's testimony that any of three accounts might be credited should a correction have been made, only one of which would result in the correction increasing income in the proper amount. For the reasons stated petitioner *56 has not met his burden of proof on this issue. Decision will be entered under Rule 50. Footnotes
1. While $1,830.42 is the amount originally allowed as a deduction, it has been stipulated that petitioner should be allowed a deduction of $2,553.00.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended.↩